# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

FACEBOOK ACCOUNT FOR "XAVIER MANE" OR
USER ID# 100044164879084 as described in Attachment A

Case No. 20-929M(NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Information associated with the Facebook User ID account 100044164879084 as described in Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C § 922(g)(1)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Deputy US Marshal Todd Marratt, USMS

Sworn to before me and signed in my presence:

Date: 4/9/2020 over the telephone

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

HONORABLE NANCY JOSEPH , U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Todd Marratt, being duly sworn, hereby depose and say:

1. I am a Deputy United States Marshal with the United States Marshals Service and, as such, am charged with enforcing all laws in all jurisdictions of the United States, its territories and possessions. I have been a member of the United States Marshals Service for 8 years and during that time have been assigned to the US Marshals Fugitive Task Force for over 4 years. While assigned to the Fugitive Task Force, I have investigated several hundred fugitive cases and have located fugitives utilizing methods in electronic surveillance to include social media accounts.

2. This Affidavit is made in support of an application for a search warrant to search the Target Account, more fully described in Attachment A, for evidence, instrumentalities, and proceeds, more fully described in Attachment B, for violations of Title 18 USC 3583 – Violations of the Conditions of Supervised Release. The facts set forth in this Affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This Affidavit is intended to show that there is probable cause to believe that evidence, instrumentalities, and proceeds, more fully described in Attachment B, for the subject offenses listed above will be found in the subject accounts, more fully described in Attachment A, and does not purport to set forth all of my knowledge of or investigation into this matter.

## STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

3. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

1

a. Title 18, United States Code, Section 2703(a) provides, in part:

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b. Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection
    (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant .

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service

    (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computer service; and
    (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c. The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. See 18 U.S.C. § 2703(c)(1)(A). No notice to the subscriber or customer is required. See 18 U.S.C. § 2703(c)(3).

2

d. The statute permits the warrant to be served on the provider, who will then disclose the relevant records to the officer, who need not be onsite at the time the search is executed. Title 18, United States Code, Section 2703(g), provides, in part:

> Presence of Officer Not Required   Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service.

e. Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter
>
> (1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section;
>
> (2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

f. Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .
>
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .
>
> (15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .
>
> (17) "electronic storage" means
>
>> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>>
>> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

3

# FACEBOOK TECHNICAL BACKGROUND

4. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts through which users can share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

5. Facebook asks users to provide basic contact information, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

6. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information in the user's account available only to himself or herself, to other specified Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those device(s).

7. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for

purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

8. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

9. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

10. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or

on their own profiles; such comments are typically associated with a specific posting or item on the profile.

11. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

12. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

13. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

14. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and creator of the group. Facebook also assigns a group identification number to each group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and administrator, as well as the current status of the group profile page.

15. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

16. Facebook also retains IP address logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.

17. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service used, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

18. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers

and their use of Facebook, such as account access information, transaction information, and account application.

## PROBABLE CAUSE

19. On or about July 28th, 2015, an indictment was issued charging Xavier Harrell in the Eastern District of Wisconsin (Case No. 15-CR-00149) for Possession of a Firearm by a Felon in violation of Title 18 USC Sections 922(g)(1). On March 9th, 2016, Harrell was sentenced by the Honorable District Court Judge Statdmueller to 30 months imprisonment and 36 months supervised release.

20. On March 20, 2019, an arrest warrant was signed by the Honorable District Court Judge Stadtmueller due to Harrell violating his terms of Supervised Release. On March 27th, 2020, the United States Marshals Service received information from a source that Harrell utilizes the Facebook account of "Xavier Mane". The source stated that Facebook messenger was his primary source of communication. Your affiant conducted a public search of Facebook and found the above account "Xavier Mane" or Facebook User ID# 100044164879084.

21. Your affiant found pictures of Xavier Harrell within the said account and confirmed they were indeed Harrell by comparing the Facebook photos to past booking photos of Harrell. Also within the "Friends" section, your affiant located known family members and associates of Harrell. The last public post by Harrell was a "timeline" photo posted on March 28th, 2020.

22. Mr. Harrell lives the life of a transient in that he does not have a stable living arrangement. Mr. Harrell does not reside at one location for long enough periods to form residency. The Facebook search warrant would assist law enforcement in attaining a phone

number, GPS locations, IP addresses, as well as posts and/or pictures of who Mr. Harrell may be staying with, at any given time.

23. Based on your affiant's training and experience in locating and apprehending potentially violent fugitives, the data being sought by this warrant will assist in locating Harrell. Because successful apprehensions, particularly of violent fugitives, often rely on the element of surprise and on taking the fugitive by unaware, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most people are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movements or other behavior of the target. Therefore, I cannot predict in advance when this data would need to be accessed, and would need access to the data at all times of the day or night in order to ensure a safe and successful apprehension.

24. As of the date of this affidavit, Harrell's whereabouts remain unknown, and the arrest warrant in 15-CR-00149 remains unserved.

## CONCLUSION

25. Based on the facts set forth in this Affidavit, your Affiant submits that there is probable cause to believe that the subject accounts contain the fruits, instrumentalities, and evidence of the subject offenses.

# ATTACHMENT A

This warrant applies to information associated with the Facebook user ID# 100044164879084 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including [[**for user ID# 100044164879084:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.]]

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook

applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the account is or was a "fan" of;

(j) All past and present lists of friends created by the account;

(k) All records of Facebook searches performed by the account;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.